# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **SLATER ZORN, LLC,** | ) |
| | ) Case No. |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **LOWE KEY MEDIA, LLC, and GREGORY LOWE II,** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Slater Zorn LLC ("Plaintiff") brings this action against Defendants Lowe Key Media, LLC ("Lowe Key") and Gregory Lowe II ("Lowe") based on Lowe Key's defaults under a secured note and related agreements and Lowe's failure to guarantee performance under the secured note and related agreements. Plaintiff seeks equitable/injunctive, compensatory, and declaratory relief.

## THE PARTIES

1. Plaintiff Slater Zorn, LLC is a Missouri limited liability company. Its sole member resides in Kansas.

2. Defendant Lowe Key Media, LLC is a California limited liability company. Upon information and belief, all of its members reside in New York.

3. Upon information and belief, Defendant Greg Lowe II resides in New York.

1

## INTRODUCTION

4. Lowe Key holds itself out as a "digital lifestyle company" that builds "apps that inspire a culture to innovate, create and share through a multimedia platform." Lowe Key claims that they "aim to establish a presence wherever consumers are talking, watching, building and listening through measurable digital channels."

5. Among other business pursuits, Lowe Key offers an app titled SongBooth on Apple's AppStore. SongBooth lets users download backing tracks from iTunes or use their own library, apply effects, and a create 30-second music video, which can be shared with the SongBooth community, on YouTube and other social media.

6. Since SongBooth was launched, it has been downloaded almost 8 million times.

7. Lowe Key also recently sponsored a global talent contest called "Project SongBooth One" where contestants could submit auditions using the SongBooth app by uploading videos of covers and/or original songs for a chance to win a label deal and a single to be produced by Grammy Nominated Artist, Ryan Leslie.

8. Lowe Key's operations have been funded, at least in part, by a loan Lowe Key obtained from Plaintiff.

9. Through a series of agreements executed by the parties to this action, Lowe Key assumed a number of obligations in connection with the loan it received from Plaintiff.

10. In breach of its obligations, Lowe Key has failed provide Plaintiff with certain documents and information, as more fully described below.

11. In breach of its obligations, Lowe Key has allowed Greg Lowe to pay personal expenses from Lowe Key's account, as more fully described below.

12. In breach of its obligations, Lowe Key has failed to make a payment to Slater Zorn that was due on March 31, 2014, as more fully described below.

## JURISDICTION AND VENUE

13. Subject-matter jurisdiction over this case is proper under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and there is complete diversity between the parties. Plaintiff is a Kansas resident and the defendants are New York residents.

14. Personal jurisdiction over the defendants is proper under Mo. Rev. Stat. § 506.500 because Lowe Key offers and sells certain software applications (which are the collateral at issue in this suit) in Missouri and to Missouri consumers, because Lowe Key entered into various agreements with a Missouri LLC and these agreements were negotiated and executed at least in part in Missouri, because Lowe entered into a guaranty with a Missouri LLC and this guaranty was negotiated and executed at least in part in Missouri, and because the performance under these agreements and guaranty was to occur at least in part in Missouri.

15. Venue is proper in the Western District of Missouri under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

**The Credit Agreement and Secured Promissory Note**

16. On or about September 24, 2013, Plaintiff and Lowe Key executed a credit agreement ("Credit Agreement") and a secured promissory note ("Note") by which Lowe Key obtained a line of credit up to $500,000.00 at 6.0% per annum from Plaintiff and, as security for that loan, pledged specific apps and a business interest. (Exh. A at p. 1 Rec. A; Exh. B at p. 1 §§ 1-2).

17. Lowe Key possesses the property pledged by Lowe Key and, on information and belief, the property is located in New York, New York.

18. Under Section 7.2 of the Credit Agreement, Lowe Key must maintain its books and records in accordance with GAAP and permit Plaintiff to examine and audit its books and records at all reasonable times. (Exh. A at p. 9 §7.2).

19. Under Section 7.4 of the Credit Agreement, Lowe Key must furnish such additional information and statements, as Plaintiff may request from time to time. (Exh. A at p. 9 §7.4).

20. The Credit Agreement and Note provide that Lowe Key's failure to comply with either Section 7.2 or Section 7.4 of the Credit Agreement constitutes a default. (Exh. A at p. 13 §12.2; Exh. B. at p. 2 §7(b)).

21. Under Section 3 of the Credit Agreement and Section 1 of the Note, the outstanding principal balance of the loan will bear interest at the interest rate set forth in the agreement on each day that the loan is outstanding. Accrued interest on the outstanding principal balance would be due and payable semi-annually on March 31, 2014, September 30, 2014, and March 31, 2015. (Exh. A at p. 4, §3; Exh. B at p. 1 §1).

22. The Credit Agreement and Note provide that Lowe Key's failure to comply with Section 3 of the Credit Agreement and Section 1 of the Note constitutes a default. (Exh. A at p. 13 §12.1; Exh. B. at p. 2 §7(a)).

23. The Credit Agreement provides that time is of the essence in Lowe Key's performance of its obligations. (Exh. A at p. 13 §12.1).

24. Under Section 7.3 Credit Agreement, Lowe Key has a duty to furnish Plaintiff with its annual statements, interim statements, and tax returns, as well as annual tax returns and

personal financial statements for any guarantors. (Exh. A at p. 9 §7.3).

25. The Credit Agreement and Note provide that Lowe Key's failure to comply with Section 7.3 of the Credit Agreement constitutes a default. (Exh. A at p. 13 §12.2; Exh. B at p. 2 §7(b)).

26. Under Section 7.9 of the Credit Agreement, Lowe Key has a duty to use loan proceeds solely for its business operations unless specific, written consent by Plaintiff is given. (Exh. A at p. 10 §7.9).

27. The Credit Agreement and Note provide that Lowe Key's failure to comply with Section 7.9 of the Credit Agreement constitutes a default. (Exh. A. at p. §12.2; Exh. B at p. 2 §7(b)).

28. Under Section 7.13 of the Credit Agreement, Lowe Key has a duty to comply with all laws, ordinances, and regulations. (Exh. A at p. 11 §7.13).

29. The Credit Agreement and Note provide that Lowe Key's failure to comply with Section 7.13 of the Credit Agreement constitutes a default. (Exh. A. at p. 13 §12.2; Exh. B at p. 2 §7(b)).

30. Under the Credit Agreement, upon any default, Plaintiff may pursue all rights and remedies provided in the Credit Agreement or available at law, in equity, or otherwise, and may pursue these remedies singularly or concurrently. (Exh. A at p. 14, §13).

31. Under the Credit Agreement and Note, upon any default, all indebtedness, including principal and interest, immediately becomes due and payable, at Plaintiff's option, and Lowe Key will then pay that amount. (Exh. A at p. 14 §13; Exh. B at p. 3 §8).

32. Under the Note, upon any default, the interest rate increases to 12.0% per annum except as limited by law. (Exh. B at p. 2 §6).

33. Under the Credit Agreement and Note, Lowe Key has the right to cure any curable default within fifteen (15) days after Plaintiff gives notice demanding cure of a default. (Exh. A at p. 13 §12.8; Exh. B at p. 3 §7(h)).

34. The balance of Lowe Key's loan under the Credit Agreement and Note became due and payable, at Plaintiff's option, on December 18, 2013 when Lowe Key received notice of its default.

35. The balance of Lowe Key's loan under the Credit Agreement and Note again became due and payable, at Plaintiff's option, on March 27, 2014 when it received notice of another default.

36. The balance of Lowe Key's loan under the Credit Agreement and Note again became due and payable, at Plaintiff's option, on March 31, 2014 when it defaulted yet again.

**The Security Agreement**

37. On or about September 24, 2013, Plaintiff and Lowe Key executed a Security Agreement ("Security Agreement") to secure payment and performance of their obligations under the Note and Credit Agreement. By the Security Agreement, Lowe Key granted to Plaintiff a security interest in the MuMento and Zold applications (collectively, the "Apps") and an interest in SongBooth LLC, a Delaware limited liability company owning the intellectual rights related SongBooth application (the "LLC Interest") (collectively, the "Collateral"). (Exh. C at p. A-2, §2(a); Exh. A at p. 1 Rec. A).

38. Lowe Key possesses the Collateral. On information and belief, the Collateral is located in New York, New York.

39. The Security Agreement provides that in the event of any default, Plaintiff may, *inter alia*: cause the Collateral to be transferred to its name; ask for, demand, collect, sue for, or

6

Case 4:14-cv-00342-DW   Document 1   Filed 04/11/14   Page 6 of 18

recover receipts for monies due or to become due under or in respect of any Collateral; and pursue any of the rights and remedies of a secured party under the Uniform Commercial Code. (Exh. C at p. A-7 §11(b), A-8 §§12(d), 13(a)).

**The Unconditional Guaranty**

40. The Credit Agreement provided that Lowe Key would furnish any executed guaranties of the loan in favor of Plaintiff by Lowe. (Exh. A at p. 10 §7.7).

41. On September 24, 2013, Lowe executed an unconditional guaranty ("Guaranty") in favor of Plaintiff for performance under the Credit Agreement, Note, or Security Agreement. (Exh. D p. 1 §1).

42. The Guaranty guaranteed to Plaintiff that should Lowe Key default in the payment, performance, or observance of any guaranteed obligations under the Credit Agreement, Note, or Security Agreement, Lowe would pay, perform, and observe the same in place and stead of Lowe Key. (Exh. D p. 1. §1).

43. The Guaranty provides that Lowe may be joined in any action against Lowe Key and that recovery may be had against Lowe even though Plaintiff did not first proceed against Lowe Key alone. (Exh. D. p. 2 §3).

**The December 18, 2013 Default**

44. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Plaintiff to examine and audit its books and records at all reasonable times. (Exh. A at p. 9, §7.2, p. 13 §12.2; Exh. B at p. 2 §7(b); Exh. C at p. A-8, §12(d)). Moreover, under Section 7.4 of the Credit Agreement, Lowe Key must furnish such additional information and statements, as Plaintiff may request from time to time. (Exh. A at p. 9 §7.4).

45. Lowe Key failed to comply with these duties. By way of example only, Lowe Key has failed to maintain its books and records in accordance with GAAP.

46. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to furnish Plaintiff with its annual statements, interim statements, and tax returns, as well as annual tax returns and personal financial statements for any guarantors. (Exh. A at p. 9 §7.3, p. 13 §12.2; Exh. B. at p. 2 §7(b); Exh. C. at p. A-8, §12(d)).

47. Lowe Key failed to comply with this obligation.

48. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to use loan proceeds solely for its business operations unless specific, written consent by Plaintiff is given. (Exh. A at p. 10 §7.9, p. 13 §12.2; Exh. B. at p. 2 §7(b); Exh. C. at p. A-8, §12(d)).

49. Lowe Key failed to comply with this obligation. The full extent of the improper expenses that have been run through Lowe Key is not fully known yet, because as explained herein, Lowe Key and Mr. Lowe are not providing the requested documents.

50. On information and belief, Lowe Key made payments directly to Greg Lowe's orthodontist. There also were unexplained charges from Neiman Marcus and Barney's and unexplained large cash withdrawals from the corporate account. Moreover, there are charges from limo companies related to daily commuting, which is not a legitimate business expense.

51. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to comply with all laws, ordinances, and regulations. (Exh. A at p. 11 §7.13; Exh. B. at p. 2 §7(b); Exh. C. at p. A-8, §12(d)).

52. Lowe Key failed to comply with this duty.

53. On December 18, 2013, Plaintiff notified Lowe Key that its aforementioned

failures constituted a default under the Credit Agreement, Note, and Security Agreement.

54. Lowe Key failed to cure this default within fifteen (15) days of notice thereof as of January 2, 2014.

55. Lowe failed to guarantee performance of these aforementioned duties or cure the default.

56. These failures constituted a default ("December 18, 2013 Default") by Lowe Key. Accordingly, the interest rate under the Note has been 12.0% per annum since at least December 18, 2013. (Exh. B p. 2 at §6).

**The March 27, 2014 Default**

57. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Plaintiff to examine and audit its books and records at all reasonable times. (Exh. A at p. 9 §7.2, p. 12 §12.2; Exh. B at p. 2 §7(b); Exh. C at p. A-8 §12(d)). Moreover, under Section 7.4 of the Credit Agreement, Lowe Key must furnish such additional information and statements, as Plaintiff may request from time to time. (Exh. A at p. 9 §7.4).

58. On February 28, 2014, Plaintiff requested that Lowe Key provide it with: 1) Lowe Key's financial statements (including its most recent balance sheet, income statement and statement of cash flow); 2) bank statements for the last 4 months; and 3) copies of any records or documents reflecting amount and source of deposits, including checks, ACH transfers, and wire transfers.

59. Lowe Key failed to comply with this request and its duties under the Credit Agreement, Note, and Security Agreement in that it did not produce any records in connection with this request.

60. On March 27, 2014, Plaintiff notified Lowe Key that the foregoing failure to produce requested documents constituted another default under the Credit Agreement, Note, and Security Agreement.

61. Lowe Key failed to cure within fifteen (15) days of notice thereof as of April 11, 2014.

62. Lowe failed to guarantee performance of the aforementioned duty or cure the default.

63. This failure constitutes another default ("March 27, 2014 Default") by Lowe Key.

**The March 31, 2014 Default**

64. As noted above, under the Credit Agreement, Note, and Security Agreement, Lowe Key has a duty to make timely payments of interest due. Interest payments are due on a semi-annual basis, with the first payment being due on March 31, 2014. (Exh. A at p. 4 § 3, p. 13 §12.1; Exh. B. at p. 1 §1; Exh. C at p. A-8 §12(d)).

65. Lowe Key failed to timely pay the accrued interest on March 31, 2014.

66. On April 1, 2014, Plaintiff provided Lowe Key with written notice of default under the Note, Credit Agreement, Security Agreement, and Guaranty, and notified Lowe Key of the fifteen (15) day period to cure their default.

67. On April 1, 2014, Plaintiff demanded payment of monies due and payable to it by Lowe Key under the Note, Credit Agreement, Security Agreement, and Guaranty.

68. Lowe Key failed to comply with this demand.

69. On April 1, 2014, Plaintiff demanded that, pursuant to Section 11(b)(i) of the Security Agreement, Lowe Key transfer all property pledged by Lowe Key to Plaintiff under the Security Agreement, the Note, the Credit Agreement, and the Guaranty.

10

70. Lowe Key failed to comply with this demand.

71. Lowe failed to guarantee performance of the aforementioned duty or cure the default.

72. This failure constitutes yet another default ("March 31, 2014 Default") by Lowe Key.

**Attorneys' Fees, Costs, and Other Expenses**

73. The Credit Agreement, Note, and Security Agreement provide that Plaintiff is entitled to all expenses, including attorneys' fees and cost, incurred enforcing Plaintiff's rights in the event of default by Lowe Key, including actions by Plaintiff to collect on the Note and actions by Plaintiff to secure custody of any Collateral. (Exh. A at p. 14 §14.2; Exh. B at p. 3 §9; Exh. C at p. A-11 §16, at p. A-13 §24).

**Controlling Law**

74. The Credit Agreement, Note, Security Agreement, and Guaranty specify that New York state law applies to this action. (Exh. A at p. 14 §14.4; Exh. B at 3 §11; Exh. C at p. A-13, §23; Exh. D. at p. 3 §9).

## COUNT I
### Breach of Promissory Note and Credit Agreement (Defendant Lowe Key)

75. Plaintiff incorporates herein by reference the above allegations of this Complaint.

76. Lowe Key remains under multiple defaults pursuant to the Note and Credit Agreement.

77. As explained above, Lowe Key defaulted in 2013 by breaching its duties under, *inter alia*, Sections 7.2, 7.3, 7.4, 7.9, and 7.13 of the Credit Agreement and Section 7(b) of the Note.

78. Plaintiff gave notice of this default on December 18, 2013.

79. Again, Lowe Key defaulted by breaching its duties under Section 7.2 of the Credit Agreement and Section 7(b) of the Note by failing to provide the documents requested Plaintiff's counsel on February 28, 2014.

80. Plaintiff gave notice of this default on March 27, 2014.

81. Yet again, Lowe Key defaulted as of March 31, 2014 by breaching its duties under Section 3 of the Credit Agreement and Sections 1 and 7(a) of the Note.

82. Plaintiff gave notice of this foregoing default on April 1, 2014.

83. Lowe Key failed to cure the December 18, 2013 Default or the March 27, 2014 Default within fifteen (15) days.

84. Lowe Key is therefore liable, at Plaintiff's option, for all indebtedness but has not paid the amount due and payable plus interest and expenses.

85. By reason of Lowe Key's default, Plaintiff is entitled to immediate possession of the property pledged to it by Defendants under the terms of the Note and Credit Agreement and judgment pursuant to N.Y. U.C.C. §§ 9-601, 9-607, and 9-609.

86. Accordingly, Plaintiff demands immediate possession of the Collateral and judgment under the Note and Credit for money damages, plus interest and expenses.

## Count II
### Breach of Security Agreement (Defendant Lowe Key)

87. Plaintiff incorporates herein by reference the above allegations of this Complaint.

88. Lowe Key remains under multiple defaults pursuant to the Security Agreement.

89. As explained above, Lowe Key breached its duties in 2013 under Sections 7.2, 7.3, 7.9, and 7.13 of the Credit Agreement and Section 7(b) of the Note, triggering default under the Security Agreement under Section 12(d).

90. Plaintiff gave notice of this default on December 18, 2013.

91. Lowe Key again breached its duties in 2014 under Section 7.2 of the Credit Agreement and Section 7(b) of the Note, triggering default under the Security Agreement under Section 12(d).

92. Plaintiff gave notice of this default on March 27, 2014.

93. Yet again, Lowe Key breaching its duties on March 31, 2014 under Section 12.1 of the Credit Agreement, triggering default under the Security Agreement under Section 12(d).

94. Upon Lowe Key's default and failure to cure, Plaintiff demanded that Lowe Key transfer the Collateral to Plaintiff pursuant to the Security Agreement.

95. Lowe Key has failed to transfer to Plaintiff the Collateral as required by the Security Agreement.

96. By reason of Lowe Key's default, Plaintiff is entitled to immediate possession of the property secured by Plaintiff under the terms of the Security Agreement and judgment pursuant to N.Y. U.C.C. §§ 9-601 and 9-609.

97. Accordingly, Plaintiff demands immediate possession of the Collateral and judgment under the Security Agreement, plus interest and expenses.

## COUNT III
### Breach of the Guaranty (Defendant Lowe)

98. Plaintiff incorporates herein by reference the above allegations of this Complaint.

99. As explained above, Lowe Key is in default under the Note, Credit Agreement, and Security Agreement.

100. By reason of Lowe Key's default, Lowe is required under the Guaranty to guarantee to Plaintiff the full and punctual payment of all amounts of principal and interest outstanding at any time under the Note and the full and punctual performance and observance by Lowe Key of all of Lowe Key's obligations under the Credit Agreement, Note, and Security Agreement.

101. Lowe has failed to pay, perform, and observe the same in place and stead of Lowe Key.

102. Accordingly, Plaintiff demands immediate possession of the Collateral and judgment under the Note, Credit Agreement, and Guaranty for money damages plus interest and expenses.

## COUNT IV
### Declaratory Judgment (Defendants Lowe Key and Lowe)

103. Plaintiff incorporates herein by reference the above allegations of this Complaint.

104. The Court is empowered pursuant to 28 U.S.C. § 2201 "in a case of actual controversy" to "declare the rights sand other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

105. The Collateral was pledged by Lowe Key pursuant to the Security Agreement for the loan made to Lowe Key by Plaintiff under the Credit Agreement and Note.

106. Lowe Key is now in default under the Credit Agreement, Note, and Secured Agreement.

107. Upon Lowe Key's default and failure to cure, Plaintiff demanded that Lowe Key transfer the Collateral to Plaintiff pursuant to the Security Agreement.

108. Lowe Key has not transferred the Collateral to Plaintiff.

109. Lowe has failed to pay, perform, and observe the same in place and stead of Lowe Key as he is required to do under the Guaranty.

110. Accordingly, an actual controversy between the parties requires judicial resolution.

111. Based upon the foregoing, Plaintiff requests a declaration that Lowe Key is in default under the Credit Agreement, Note, and Security Agreement, that Lowe has breached the Guaranty, that defendants owe the amount due and payable under the Note and Credit Agreement, and that the Collateral is the property of Plaintiff.

## COUNT V
### Replevin [N.Y. C.P.L.R. § 7101] (Defendant Lowe Key)

112. Plaintiff incorporates herein by reference the above allegations of this Complaint.

113. The property pledged by Lowe Key, LLC to Plaintiff under the Credit Agreement constitutes "general intangibles" under N.Y. U.C.C. § 9-102(a)(42).

114. Defendants have refused to pay the amount due and payable, plus interest and expenses.

115. Lowe Key is in default under the Credit Agreement, Note, and Security Agreement.

116. Upon Lowe Key's failure default and failure to cure, Plaintiff demanded that Low Key transfer the Collateral under the Security Agreement.

15

117. Lowe Key has failed to comply with Plaintiff's demand.

118. Plaintiff has a property interest superior to that of Lowe Key in the Collateral pledged to Plaintiff under the Credit Agreement, Note, and Security Agreement.

119. Lowe Key's continued possession of the secured property constitutes wrongful detention.

120. Plaintiff is entitled to immediate possession of the Collateral pursuant to N.Y. U.C.C. §§9-601 and 9-609 and a judgment under CPLR § 701 entitling it to recover Collateral, along with an award of damages for wrongful detention, plus interest and expenses.

## COUNT VI
### Conversion (Defendant Lowe Key)

1. Plaintiff incorporates herein by reference the above allegations of this Complaint

2. Lowe Key continues to exercise dominion over the Collateral in a manner inconsistent with the rights of the true owner, Plaintiff.

3. Plaintiff is the true owner of the Collateral because Lowe Key defaulted under the Credit Agreement, Note, and Security Agreement.

4. Upon Lowe Key's default and failure to cure, Plaintiff demanded that Lowe Key transfer the Collateral to Plaintiff pursuant to the Security Agreement.

5. Lowe Key has failed to comply with Plaintiff's demand.

6. Based upon the foregoing, Defendants are liable to Plaintiff for damages equal to the value of the Collateral, along with an award of damages for wrongful detention, plus interest and expenses.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

1. Judgment on Count One against Lowe Key for money damages, plus interest, expenses, attorneys' fees, and costs and disbursements of this action;

2. Judgment on Count Two against Lowe Key for immediate possession of the Collateral, plus damages for wrongful detention, interest, expenses, attorneys' fees, and costs and disbursements of this action;

3. Judgment on Count Three against Lowe for money damages and immediate possession of the Collateral, plus damages for wrongful detention, plus interest, expenses, attorneys' fees, and costs and disbursements of this action;

4. Judgment on Count Four against Lowe Key for a declaration that Lowe Key is in default under the Credit Agreement, Note, and Security Agreement, that Lowe breached the Guaranty, that defendants owe the amount due and payable under the Note and Credit Agreement, and that Plaintiff is the unencumbered owner of the Collateral;

5. Judgment on Count Five against Lowe Key for immediate possession of the Collateral, plus damages for wrongful detention, interest, expenses, attorneys' fees, and costs and disbursements of this action;

6. Judgment on Count Six against Defendants for monetary damages, interest, expenses, attorneys' fees, and costs and disbursements in an amount to be determined at trial; and

7. Such other and further relief as the Court may deem just and proper.

DATED:  April 11, 2014    Respectfully submitted,

**BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT, LLP**

By: */s/  Nick J. Kurt*
Nick J. Kurt (MO Bar # 52216)
Kenneth Duvall (MO Bar #63476)
2600 Grand Boulevard Suite 1200
Kansas City, Missouri  64108
Telephone:  (816) 561-7007
Facsimile:  (816) 561-1888
nkurt@berkowitzoliver.com

**ATTORNEY FOR PLAINTIFF**